No. 25,716.

The Harveyville State Bank, *Appellee,* v. J. H. Lee and Irving
Denny (J. H. Lee, Appellant).

SYLLABUS BY THE COURT.

1. Banks and Banking—*Managing ˋ Officers—Overdrafts—Conspiracy—Evidence.* Upon examination, it is held that the evidence is not sufficient to sustain the verdict under the theory on which the case was submitted to the jury. ˙

2. Same—*Mismanagement—Evidence—Competency.* On the trial of an action by a bank against its cashier and its vice president to recover damages for their mismanagement, evidence is competent which tends to show that each of those officers had knowledge of what the other was doing and consented thereto.

Appeal from Wabaunsee district court; Robert C. Heizer, judge. Opinion filed April 11, 1925. Reversed.

*Silas Porter,* of Topeka, *C. E. Carroll,* and *A. E. Carroll,* both of Alma, for the appellant.

*A. E. Crane, J. E. Addington,* both of Topeka, and *William Bowes,* of Alma, for the appellee.

The opinion of the court was delivered by

Marshall, J.: The plaintiff sued to recover from the defendants $30,000 for the wrongful misapplication by the defendants of that amount of money of the plaintiff under a conspiracy between the defendants to use the money of the plaintiff for the benefit and advantage of themselves and certain others associated with them. Judgment was rendered in favor of the plaintiff for $20,397, from which defendant J. H. Lee appeals. Irving Denny does not appeal.

The petition alleged that J. H. Lee had been elected cashier and Irving Denny assistant cashier of the bank; that subsequently J. H. Lee had been elected vice president and Irving Denny cashier; and that they had been intrusted with the control and management of the business of the bank.

The petition also alleged—

"That shortly after being so intrusted ˏwith the control and management of plaintiff's business, and without the knowledge or discovery thereof by plain-˙ tiff, or its board of directors, until in July, 1920, and in utter disregard of their duty to faithfully conduct and manage plaintiff's business, said defendants, J. H. Lee and Irving Denny, designedly, intentionally, willfully, knowingly and collusively connived and agreed one with the other to conduct and manage plaintiff's business and use plaintiff's funds, assets, credits and property primarily for their own advantage, use and benefit, and for the advantage, use

and benefit of their several associates in business as hereinafter stated. And to that end and for that purpose said defendants constantly conferred with each other and kept each other fully advised of all matters and transactions relating to plaintiff's business and affairs.

.    .    .    .    .    .    .    .    .    .    .    .

"Plaintiff further says that from the time of the election of said J. H. Lee, cashier, and said Irving Denny, assistant cashier, as aforesaid, said J. H. Lee was extensively engaged in various enterprises, dealing principally in live stock, both pure bred and common, and in lands; having associated with him in these enterprises, as partners, his brother, E. W. Lee, John W. Cook, and in numerous instances one F. A. Hanna, then all at Harveyville. That in carrying on their said enterprises said Lee and his said associates were borrowers and users of large sums of money, much of which they obtained from plaintiff through defendants as its managing officers. That the loans so made were often in excess of the fifteen per cent limit allowed by law. That to increase the amount of loanable funds available for the use of said parties and said associates, plaintiff's accounts with its correspondents were changed by defendants at will, and plaintiff's credit with such correspondents banks was used by said defendants for the personal use of themselves and their said associates.

"Plaintiff further says that the aforesaid F. A. Hanna was at all times herein mentioned practically insolvent; that he was rash and reckless in his business ventures; that plaintiff cannot state in detail what part of his business, consisting principally of dealings in live stock, was individual, and what in partnership with said J. H. Lee. That the business of said F. A. Hanna was carried on almost entirely on borrowed money, furnished to him by and through defendants, and largely from plaintiff's funds.

.    .    .    .    .    .    .    .    .    .    .    .

"Plaintiff further says that during the time said defendants were in charge of plaintiff's business as aforesaid, said F. A. Hanna was not only loaned on his unsecured or poorly secured notes large sums of plaintiff's money, but he was regularly and constantly permitted by defendants to overcheck his account with plaintiff in large amounts. Said defendants and each of them knowingly paying and permitting to be paid out of plaintiff's funds checks drawn by said Hanna on plaintiff, when he did not have on deposit sums equal to such checks. That overdrafts so created were in many instances covered by said Hanna giving, and said defendants taking, his unsecured notes to plaintiff for the same. That many of these notes having their origin in overdrafts, as aforesaid, entered into plaintiff's recent losses. Among the notes of said Hanna so taken by defendants and representing loans for the settlement of overdrafts and contributing to and entering into plaintiff's losses, as aforesaid, are the following:

| | |
|---|---:|
| December 16, 1918 | $2,460.25 |
| April 2, 1919 | 1,500.00 |
| June 7, 1919 | 1,500.00 |
| June 28, 1919 | 1,200.00 |
| June 28, 1919 | 1,200.00 |
| June 28, 1919 | 1,000.00 |
| August 9, 1919 | 6,500.00 |
| October 4, 1919 | 5,000.00 |
| November 5, 1919 | 2,500.00 |
| November 17, 1919 | 1,059.55 |
| November 20, 1919 | 4,000.00" |

The petition alleged that by reason of the wrongful acts of the defendants the bank was damaged in the sum of $30,000.

On the trial it was admitted that—

"J. H. Lee held the position of assistant cashier of the Harveyville State Bank from April, 1911, until April, 1917, when he was elected cashier, and held that position until November 8, 1919. In 1916 he was made a director and third vice president; in January, 1920, he was elected vice president and held that position until January 7, 1921.

"Irving Denny was assistant cashier from April, 1917, until November 8, 1919, when he was elected cashier, which position he held until July, 1920; he was also a director."

The plaintiff attempted to prove knowledge of and participation in the mismanagement of the bank by defendant Lee. He attempted to prove that the wrongful acts were done without his knowledge or consent.

The evidence which tended to prove that Lee had knowledge of the wrongful acts of Denny was that Lee was a director and third vice president of the bank from January, 1916, to January, 1920, when he was elected vice president, which position he held until January, 1921, during which time he remained a director in the bank; that in April, 1919, Lee went to Topeka and became interested in the Kansas Reserve Investment Company, but remained cashier of the plaintiff bank and gave part of his time to the control and operation of that bank until November 8, 1919, when Denny was elected cashier and Lee was elected vice president; that when Denny was elected cashier he desired Lee to assist him in conducting the affairs of the bank, and stated he would not accept the position of cashier unless Lee did assist him; that Lee stated he would accept the position of vice president so he could help run the bank; that afterward Lee was often in the bank transacting a part of its business; that he and Denny often consulted with each other about the affairs of the bank; that when Denny was elected cashier and Lee was elected vice president, it was agreed Denny should make daily reports to Lee concerning the business of the bank; that false reports were made to the bank commissioner, some of which were signed by Lee and were by him transmitted to the commissioner's office; that Lee had knowledge of the false statements contained in some of those reports; that among the false statements made were those failing to show large overdrafts by F. A. Hanna, a customer of the bank; that Denny often concealed from the board of directors the fact that Hanna was overdrawn at the bank; that Hanna's checks were sometimes carried as cash items by Denny when Hanna

had no funds in the bank with which to pay the checks; that Hanna and Lee had been in business together, and their business relations with each other had been harmonious; that Lee knew Hanna was often largely overdrawn at the bank and knew he was financially embarrassed in 1920; that Denny consulted Lee concerning some of those overdrafts and was advised by Lee what to do with them; that a draft on Hanna was drawn by Denny in favor of the bank January 21, 1920, to take up an overdraft by Hanna; that the draft found its way into Lee's hands in Topeka through the Kansas Reserve State Bank, and was, by the order of Lee, returned to the plaintiff bank with the statement that the draft had been made by mistake; that approximately $90,000 of the notes held by the plaintiff bank were rediscounted to the Kansas Reserve State Bank with the knowledge of Lee and without the knowledge of the directors of the plaintiff; and that the rediscounted notes were not shown on the reports made to the bank commissioner nor reported to the directors of the plaintiff bank.

The plaintiff's abstract states—

"Upon the argument to the jury, the attorneys for the plaintiff stated to the jury that plaintiff would only ask to recover on the $20,000 overdraft, which had been covered up, and on the $1,000 note executed in June, 1920, for an additional overdraft in the account of F. A. Hanna at that time. The jury were also told to give the defendants a credit of $603 for the property sold on the mortgage given to the bank by Hanna."

The supplemental abstract of Lee, in response to the quoted statement from the abstract of the plaintiff, says:

"Again we assert that neither section 558, General Statutes, 1915 [R. S. 9-141], nor any other section of the Kansas statutes was referred to or mentioned either in the pleadings or argument before the court or jury, as a basis for the admission of testimony objected to by defendant, or as a basis for plaintiff's right to recover. The first time section 558 was mentioned was long after Mr. McKeever was dead and buried, and was by way of a question by Judge Heizer during the oral argument on the motion for a new trial. He asked whether the judgment might not be sustained under section 558. No one made any answer."

The transcript does not contain the trial statements, the argument to the jury, or the statements made by the court on the hearing of the motion for a new trial. The action was tried on the theory that the defendants had connived with each other to mismanage the business of the bank for the benefit of themselves and several associates, one of which was F. A. Hanna. The instructions to the jury were formed upon that theory of the action. The verdict of the jury is

consistent with a finding in favor of the plaintiff for the amount of
the Hanna overdrafts.

1. The defendant Lee says:

"In order to stand at all, the general verdict must be based upon the
charge of conspiracy."

The sufficiency of the evidence to sustain the verdict of the jury
is challenged. It should be noted that at the close of the plaintiff's
evidence the defendant Lee filed a demurrer thereto, which was over-
ruled. A summary of the evidence to sustain the verdict has been
set out. There was no evidence to show that all of the things done
by Denny in the mismanagement of the bank for which the jury re-
turned a verdict of $20,397 against Lee had been done with his
knowledge or consent. Under the theory on which the cause was
submitted to the jury, it was necessary that evidence be introduced
to show that Lee had knowledge of or consented to those acts of
mismanagement by Denny for which Lee is to be held responsible.
The evidence is in such condition that this court cannot separate
the acts of Denny which were committed by him with the knowledge
and consent of Lee from those acts of which Lee had no knowledge
or to which he did not consent. Evidence of the knowledge of or
consent to all of the acts for which he is sought to be made liable
not having been introduced, a reversal of the judgment is compelled.

The plaintiff argues that the judgment can be sustained under
section 9-141 of the Revised Statutes, which reads:

"Any bank officer who shall pay out or permit to be paid out the funds
of any bank upon the check, order or draft of any individual, firm, company,
corporation or association which has not on deposit with such bank a sum
equal to such check, order or draft, shall be personally liable to such bank
for the amount so paid."

The petition alleged facts which showed a violation of that statute,
and evidence was introduced which tended to prove those facts, but
that issue was not submitted to the jury. There is a statement in
the abstract of the plaintiff which indicates that counsel asked the
jury to return a verdict in favor of the bank on the theory that F.
A. Hanna had been permitted to overdraw his account in the sum
of $21,000, on which there had been paid $603. The verdict of the
jury was for that amount, $20,397. Counsel for the defendant Lee
contends that this matter was not considered until on the hearing of
the motion for a new trial. However that may be, the instructions
did not submit to the jury the right of the plaintiff to recover under

18—118 KAN.

section 9-141 of the Revised Statutes, and the judgment cannot be sustained on that theory.

2. The defendant Lee moved to strike out all the evidence concerning the rediscounting of the notes of the plaintiff to the Kansas Reserve State Bank and moved to take from the consideration of the jury all testimony concerning the contract account which involved the deposit of escrow money standing idle. Both of those motions were denied. It is urged that each of the orders denying those motions was error, and it is argued that the purpose of that evidence was to prejudice the jury by attempting to show that the plaintiff bank had been injured by the transactions. The evidence was competent for the purpose of showing that Lee had knowledge of and was consenting to the manner in which Denny was conducting the business of the plaintiff, and for that reason it was not error to deny the motions.

The judgment is reversed, and a new trial is granted.

BURCH, J., concurs in the judgment of reversal.

HARVEY, J., dissents from first paragraph of the syllabus and corresponding portion of the opinion.